UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Application of<br><br>FOURWORLD EVENT OPPORTUNITIES, LP and GENESIS EMERGING MARKETS INVESTMENT COMPANY,<br><br>Petitioners, for an Order pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding. | Case No. 23-_____ |

**MEMORANDUM OF LAW IN SUPPORT OF PETITIONERS' APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782**

Duane L. Loft
Brianna Hills Simopoulos
John McAdams
**PALLAS PARTNERS (US) LLP**
75 Rockefeller Plaza
New York, NY 10001
Telephone: (212) 970-2300
Duane.Loft@pallasllp.com
Brianna.Simopoulos@pallasllp.com
John.McAdams@pallasllp.com

*Counsel for Petitioners*

i

# TABLE OF CONTENTS

APPLICATION ................................................................................................................................. 1

BACKGROUND ............................................................................................................................. 3

    A.    Parties to the Foreign Proceeding ........................................................................ 3

    B.    The Merger............................................................................................................ 3

    C.    Petitioners' Cayman Islands Appraisal Proceeding.............................................. 5

    D.    Discovery in the Cayman Islands Appraisal Proceeding...................................... 6

    E.    Respondent and the Discovery Sought ................................................................ 6

ARGUMENT ................................................................................................................................... 7

I.    The Application Satisfies the Three Statutory Requirements of 28 U.S.C. § 1782............................................................................................................................ 8

    A.    Respondent "Is Found" in This District................................................................ 8

    B.    The Discovery Sought Is "For Use" in a Foreign Proceeding. .............................. 9

    C.    Petitioners Are "Interested Person[s]." ................................................................ 10

II.    The Discretionary *Intel* Factors Weigh in Favor of Discovery........................................ 10

    A.    Respondent Is a Non-Participant in the Appraisal Proceeding. ........................... 11

    B.    The Cayman Islands Court Is Receptive to the Requested Discovery. ............................................................................................................. 11

    C.    Petitioners Are Not Circumventing Foreign Proof-Gathering Restrictions. ......................................................................................................... 13

    D.    The Subpoena Is Not Unduly Burdensome. ........................................................ 14

CONCLUSION................................................................................................................................ 15

# **TABLE OF AUTHORITIES**

Cases

*Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*,
   785 F. Supp. 2d 434 (S.D.N.Y. 2011) ............................................................................... 13

*Azima v. Citibank, N.A.*,
   No. 1:22-MC-72 (KPF), 2022 WL 1287938 (S.D.N.Y. Apr. 29, 2022) .................................. 10

*Brandi–Dohrn v. IKB Deutsche Industriebank AG*,
   673 F.3d 76 (2d Cir. 2012) ........................................................................................ 9, 11, 14

*Certain Funds, Accounts and/or Inv. Vehicles v. KPMG, L.L.P.*,
   798 F.3d 113 (2d Cir. 2015) ............................................................................................... 9

*Euromepa, S.A. v. R. Esmerian, Inc.*,
   51 F.3d 1095 (2d Cir. 1995) ............................................................................. 11, 12, 13, 15

*First Am. Corp. v. Price Waterhouse LLP*,
   154 F.3d 16 (2d Cir. 1998) ............................................................................................... 14

*Gushlak v. Gushlak*,
   486 F. App'x 215 (2d Cir. 2012) ....................................................................................... 13

*In re Accent Delight Int'l Ltd.*,
   869 F.3d 121 (2d Cir. 2017) ........................................................................................... 7, 9

*In re Al-Attabi*, 21-MC-207 (VSB) (RWL),
   2022 WL 229784 (S.D.N.Y. Jan. 26, 2022) ...................................................................... 12

*In re Application of Athos Asia Event Driven Master Fund*,
   No. 1:21-MC-00208-GBF, ECF 8 (S.D.N.Y. Mar. 3, 2021) .............................................. 13

*In re Application of Athos Asia Event Driver Master Fund*,
   No. 4:21-MC-00153-AGF, 2021 WL 1611673 (E.D. Mo. Apr. 26, 2021) .......................... 13

*In re Application of FourWorld Event Opportunities, LP*,
   No. 2:23-mc-00012 (C.D. Cal.) .......................................................................................... 7

*In re Bayer AG*,
   146 F.3d 188 (3d Cir. 1998) ............................................................................................. 14

*In re Blue Skye Fin. Partners S.A.R.L.*,
   22 Misc. 171 (KPF), 2022 WL 2441074 (S.D.N.Y. July 5, 2022) ..................................... 11

*In re del Valle Ruiz*,
   939 F.3d 520 (2d Cir. 2019) ........................................................................................... 14

*In re FourWorld Event Opportunities Fund, L.P.*,
   22 Misc. 316 (KPF), 2022 WL 17156111 (S.D.N.Y. Nov. 21, 2022)...................................... 11

*In re FourWorld Event Opportunities, LP*,
   No. 21-mc-00283-RGS, ECF No. 6 (D. Del. July 29, 2021)........................................ 12

*In re FourWorld Event Opportunities, LP*,
   No. 21-mc-00543-PKC, ECF No. 8 (S.D.N.Y. Aug. 8, 2021) .................................. 12

*In re Gushlak*,
   No. 11-MC-218 (NGG), 2011 WL 3651268 (E.D.N.Y. Aug. 17, 2011) ................................ 14

*In re Habib*,
   No. 1:21-MC-522 (KMK), 2022 WL 1173364 (S.D.N.Y. Apr. 20, 2022)................................ 15

*In re Penner*,
   2017 WL 5632658 (D. Mass. Nov. 22, 2017) ....................................................................... 13

*In re Platinum Partners Value Arbitrage Fund L.P.*,
   583 B.R. 803 (Bankr. S.D.N.Y. 2018)....................................................................... 12

*In re Porsche Automobil Holding SE*,
   No. 1:15-mc-417 (LAK), 2016 WL 702327 (S.D.N.Y. Feb. 18, 2016) ............................... 8, 12

*In re Top Matrix Holdings, Ltd.*,
   No. 1:18-MC-465 (ER), 2020 WL 248716 (S.D.N.Y. Jan. 16, 2020)................................ 14, 15

*Intel Corp. v. Advanced Micro Devices, Inc.*,
   542 U.S. 241 (2004)....................................................................................................... passim

*Marubeni Am. Corp. v. LBA Y.K.*,
   335 F. App'x 95 (2d Cir. June 17, 2009) ................................................................................ 8

*Mees v. Buiter*,
   793 F.3d 291 (2d Cir. 2015) ................................................................................ 8, 9, 13

*Pfaff v. Deutsche Bank AG*,
   No. 20-mc-0025-KPF, 2020 WL 3994824 (S.D.N.Y. July 14, 2020).................................. 8, 9

Statutes

28 U.S.C. § 1782........................................................................................................ passim

# APPLICATION

Petitioners respectfully submit this Application pursuant to 28 U.S.C. § 1782 to take limited discovery from Respondent for use in connection with an appraisal proceeding filed in the Grand Court of the Cayman Islands (the "**Cayman Court**") on November 10, 2020 (the "**Appraisal Proceeding**"). In the Appraisal Proceeding, Petitioners (along with other dissenting shareholders) seek a determination of the fair value of their former shareholdings in 58.com ("**58.com**" or the "**Company**"), a Cayman Islands company that was delisted from the New York Stock Exchange and taken private on September 17, 2020. Petitioners' shares were forcibly canceled through an $8.7 billion merger orchestrated by the Company's CEO and several private equity funds (the "**Merger**").

In the Appraisal Proceeding, Petitioners and other dissenting shareholders will assert that the Merger was coercive and fundamentally unfair to minority shareholders, with respect to both the Merger price, which significantly undervalued 58.com's shares, and the process to approve the Merger. Through this Application, Petitioners seek to take the deposition of Li (Lily) Dong ("**Respondent**"), a director of 58.com and a member of the Special Committee that approved the merger. Respondent has knowledge that is relevant to the Appraisal Proceeding, in which the Cayman Court will examine both the fairness of the Merger consideration and also the process undertaken by the Company to approve the Merger.

Section 1782 authorizes this Court to order discovery from any person that resides or is found in this district to assist with proceedings before foreign tribunals. Petitioners' Application meets all of the statutory requirements of Section 1782: (i) Respondent "is found" in this District; (ii) the Requested Discovery is "for use" in a foreign proceeding, namely the Appraisal Proceeding; and (iii) Petitioners, each of which is a party to the Appraisal Proceeding, easily meet the standard for an "interested person" under the statute. In addition, each of the Supreme Court's factors that guide this Court's exercise of discretion under Section 1782 weighs decisively in favor of granting Petitioners' Application. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004) ("*Intel*").

*First*, Petitioners seek discovery from a "nonparticipant" in the foreign action. *Id.* Respondent is not a party in the Appraisal Proceeding or otherwise subject to the jurisdiction of the Cayman Court. This is a sufficient basis for the Court to hold that the first factor is satisfied.

*Second*, there is no indication, let alone the required "authoritative proof," suggesting that the Cayman Court might be unreceptive to Section 1782 assistance. *Id.* To the contrary, (1) Petitioners *prima facie* have the right to gather evidence pursuant to Section 1782 to the Cayman Court in support of their claims, and (2) admissibility of such evidence will be judged by the same threshold of relevance and narrow exclusionary rules applicable to all other evidence presented to the Court. *See* Sections I.B, II.B, *infra*. No court in the Cayman Islands considering an appraisal application has ever excluded evidence because it was obtained using Section 1782. *See* Declaration of Duane L. Loft ("**Loft Decl.**") Ex. 5, Declaration of Harry Rasmussen ("**Rasmussen Decl.**") Ex. C.

Indeed, the Directions Order from the Grand Court in the Appraisal Proceeding specifically contemplates that the parties will use Section 1782 to obtain evidence for use in that proceeding, the Petitioners have done so in related Section 1782 proceedings, and the Company has intervened in those actions, in each case, expressly taking no position as to the propriety of Section 1782 discovery. This is consistent with recent decisions from Cayman Islands appraisal cases, decisions of other U.S. courts finding that Cayman courts are receptive to Section 1782 evidence, and decisions of courts across the country in related Section 1782 proceedings, which have found that this Cayman court is receptive to Section 1782 discovery for this Appraisal Proceeding.

*Third*, the Application is not concealing any improper attempt to circumvent any foreign discovery restrictions on proof gathering. *Intel*, 542 U.S. at 264. The requested discovery does not implicate any privilege or special protection that would make it improper under Cayman Islands law.

*Fourth*, the proposed discovery is not unduly burdensome. *Id.* To the contrary, the subpoena is narrowly tailored to seek information directly relevant to the critical issues in the Appraisal Proceeding—namely testimony from Respondent about the Special Committee's

2

negotiation, consideration, and approval of the Merger. Depositions are frequently granted under Section 1782.

## BACKGROUND

### A. Parties to the Foreign Proceeding

Petitioners are funds that invested in 58.com and owned 58.com shares immediately before the effective date of the Merger that is the subject of Appraisal Proceeding. *See* Rasmussen Decl. ¶ 5. Petitioners are respondents in the Appraisal Proceeding. *Id.* ¶ 4. Before the Merger, 58.com—China's largest online classifieds business—was a publicly traded corporation incorporated in the Cayman Islands. *Id.* ¶¶ 10–11. The Company's American Depository Shares ("**ADS**") were traded on the New York Stock Exchange. *Id.* ¶ 11. Jinbo Yao, the Company's CEO and founder, historically maintained significant control over the voting shares of 58.com. *Id.* ¶ 12.

### B. The Merger

On June 15, 2020—three months after the world was plunged into the COVID-19 global pandemic, which had a temporary negative impact on the demand for the Company's online classifieds services and thus its share price—the Company announced that it had entered into a merger agreement through which 58.com would be acquired by Mr. Yao along with a consortium of private equity funds (the "**Buyer Group**"). *Id.* ¶ 15. In addition to Mr. Yao, the Buyer Group also included funds wholly owned and controlled by Warburg Pincus and General Atlantic—two New York–based private equity firms—along with Ocean Link Partners, a China-based private equity firm for which Respondent is a director. As noted, through Mr. Yao, the Buyer Group collectively controlled over 44% of the Company's voting shares as of August 7, 2020. *Id.* ¶ 16.

The announcement stated that on the effective date of the Merger, 58.com's publicly traded ADS—equity shares of a foreign company held by a U.S. depositary bank available for purchase by U.S. investors—would be canceled in exchange for the right to receive $56 per ADS. *Id.* ¶ 17. Under the terms of the Merger, 58.com was to become a wholly owned subsidiary of a company called Quantum Bloom Group Ltd., which would be beneficially owned by the Buyer Group, including Mr. Yao, Warburg Pincus, General Atlantic, Ocean Link, and others.

The lead-up to the Merger announcement was characterized by a flawed process designed to engineer the management buyout desired by Mr. Yao and his private equity partners. On March 24, 2020, the Company engaged Kaihui Limited ("**Kaihui Limited**") as its consultant to explore strategic transactions. On April 2, 2020, Kaihui Limited contacted Ocean Link; incredibly, that very evening, Ocean Link submitted a proposal to acquire all the outstanding shares of the Company at $55 per share, an offer clearly designed to opportunistically capitalize on a temporary depression on 58.com's trading prices associated with the coronavirus outbreak, which immediately before, on January 16, 2020, were in excess of $69 per share. The Company then decided to create a Special Committee of independent board members, which would be tasked with considering the Merger. However, there were *no* independent board members at the time. The Company consequently appointed two new board members: Li (Lily) Dong and Robert Frank Dodds, Jr. who, together, comprised the entire Special Committee.

Other features of the Merger process give rise to significant concern. The Special Committee treated Kaihui Limited as its advisor and agent throughout its negotiations with the Buyer Group, even though Kaihui Limited was hired by the same members of the Company's management that would later propose the transaction as part of the Buyer Group. No effort was undertaken to shop the Company to competing bidders to ensure that 58.com shareholders received maximum value for their shares. Ultimately, the Special Committee and the Buyer Group agreed to a purchase price of $56 per share, but only after removing a critical protection that would have required approval by a majority of the minority shareholders (the "**MoM Condition**") to protect minority shareholder rights, making the approval of the transaction almost certain regardless of support from the minority shareholders. As previously noted, the Buyer Group that took 58.com private collectively held 44% of the Company's voting shares, and other principal shareholders (who collectively held 28% of the Company's voting power) were incentivized to vote for the Merger because they were not required to exchange their shares for the inadequate Merger consideration (i.e., their shares were rolled over into the merged company). Thus, the controlling shareholders were able to impose the Merger on minority shareholders without their consent. The

negotiation process took only 74 days, and the price negotiation lasted only 10 days, a staggeringly rushed timeline designed to undervalue the Company and squeeze out minority shareholders.

Although minority shareholders expressed concern about the deal, on September 7, 2020, the Company held an extraordinary general meeting of shareholders (the "**EGM**"), at which time 58.com shareholders voted on whether to approve the Merger. Rasmussen Decl. ¶ 28. Only 15% of all shareholders that were unaffiliated with either the Buyer Group or the Rollover Shareholders voted in favor of the transaction. *Id.* Despite widespread opposition from the unaffiliated shareholders, the transaction was forced through. Accordingly, Petitioners' shares and the shares of all remaining stockholders—other than Members of the Buyer Group—were canceled in exchange for the Merger consideration effective September 17, 2020, at a price Petitioners allege is substantially below their fair value. *Id.* ¶ 29.

As alleged in the Appraisal Proceeding, the Merger price significantly undervalued 58.com shares, was the result of a significantly flawed process, and was coercive and unfair to 58.com's minority shareholders.

### C. Petitioners' Cayman Islands Appraisal Proceeding

Under Section 238 of the Companies Act, the Cayman Court in the Appraisal Proceeding has a statutory obligation to determine the fair value of the dissenting shareholders' shares. As described in the declaration of Justice Ingrid Mangatal, retired Judge of the Grand Court of the Cayman Islands (Rasmussen Decl. Ex. C, the "**Mangatal Decl.**"), the parties to the Appraisal Proceeding—including the Petitioners and 58.com—will submit evidence, expert testimony, and legal briefs to the Cayman Court, which will weigh the evidence and determine the fair value of Petitioners' shares. *See* Mangatal Decl. ¶ 29. In assessing fair value in a Cayman Islands Appraisal Proceeding, the Cayman Court will examine the fairness (or lack thereof) of the process that led 58.com's board to approve the Merger. In doing so, the Cayman Court will consider the fairness of the Merger to 58.com's minority stockholders and will likely focus on, among other things, the process by which the 58.com board and/or Special Committee negotiated and approved the Merger price, and the valuations relied upon by the 58.com Special Committee and the Buyer Group.

### D. Discovery in the Cayman Islands Appraisal Proceeding

There is no automatic right to discovery in Section 238 proceedings similar to pre-trial discovery in the United States. Instead, only upon Court order is a party to the proceeding required to provide discovery of "documents which are in their possession, custody or power relating to any matter in question between them in the action." Mangatal Decl. ¶ 31 (citing Grand Court Rules ("**GCR**") Order 24 rule 3). Discovery of non-parties, particularly those like Respondent that are outside the Court's jurisdiction, is very limited, subject to cumbersome procedures, and rarely used. *Id.* ¶ 42. The discovery process in the Appraisal Proceeding is ongoing. Rasmussen Decl. ¶¶ 42–43.

Nevertheless, Cayman courts remain receptive to evidence obtained through other judicial measures such as 28 U.S.C. § 1782. Indeed, as explained by Justice Mangatal, "Cayman Islands courts have had the opportunity to consider specifically the use of discovery obtained through Section 1782 in connection with Cayman Islands proceedings and have held that it is permissible for a litigant in a Cayman Islands proceeding to exercise any rights it may have under Section 1782 to obtain relevant evidence, including deposition testimony, for use in proceedings in the Cayman Islands." Mangatal Decl. ¶ 54. All relevant evidence obtained through this Application, other than that for which privilege can be asserted, will be admissible in the Cayman Court. *Id.* ¶ 52. Furthermore, Cayman Islands courts expect the parties to obtain the evidence they believe is necessary to prosecute their case. *Id.* ¶ 65. There is no requirement to obtain permission from a Cayman Islands court before seeking relevant evidence abroad in the United States under Section 1782. *Id.* And indeed, the court order that governs discovery in the Appraisal Proceeding (the "**Directions Order**") contains a provision that expressly contemplates the use of Section 1782. *See* Rasmussen Decl. Ex. B ¶ 50.

### E. Respondent and the Discovery Sought

As described in the **Proxy Statement** (Loft Decl. Ex. 3), Respondent was one of a two-member Special Committee that approved the Merger. Proxy Statement at 27.

6

Petitioners seek limited discovery from the Respondent, targeted squarely at issues central to the Appraisal Proceeding.[1] As discussed above, as one of only two members of the Special Committee, Respondent was directly involved in and responsible for the Company's decision to approve the Merger and played a hands-on role in the decision-making and negotiating process that the deal required, including decisions regarding the ultimate Merger price. *Id.* at 26–35 (describing Special Committee's activities in considering the fairness of the Merger); *see also, e.g., id.* at 34 ("Later that day, Ms. Dong called representatives of Warburg Pincus, and Mr. Dodds called representatives of General Atlantic, respectively, to further negotiate for a further increase in the purchase price, as well as the removal of the Dissenters' Rights Condition and inclusion of the Approval by a Majority of the Unaffiliated Condition.").

Petitioners' Application thus seeks deposition testimony from Respondent, regarding: (i) the fairness of and the process engaged in to reach the Merger price, including the independence of the Special Committee; (ii) 58.com's valuation, including concerning any forecasts of the Company's future performance; and (iii) information pertaining to any alternative bids to acquire the Company.

## ARGUMENT

28 U.S.C. § 1782 permits U.S. district courts to grant discovery for use in a foreign proceeding. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004). A Section 1782 application must satisfy three prima facie elements: (1) the discovery is sought from a person that resides or is found within the District; (2) the discovery is for use before a foreign tribunal; and (3) the applicant is an "interested person." *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 128 (2d Cir. 2017).

If the statutory requirements are met, the court considers four discretionary "*Intel*" factors: (1) whether the person from whom discovery is sought is a "nonparticipant in the matter arising

---

[1] Petitioners have also sought this limited Section 1782 assistance in a parallel proceeding in the Central District of California. *See In re Application of FourWorld Event Opportunities, LP*, No. 2:23-mc-00012 (C.D. Cal.).

7

abroad"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264–65.

In exercising this discretion, courts are often mindful of "the twin aims of Section 1782 providing efficient means of assistance to participants in international litigation, and encouraging foreign countries by example to provide similar means of assistance to our courts." *Mees v. Buiter*, 793 F.3d 291, 297–98 (2d Cir. 2015). None of the discretionary factors should be given more weight than the others, and no one factor is dispositive. *Marubeni Am. Corp. v. LBA Y.K.*, 335 F. App'x 95, 97 (2d Cir. June 17, 2009). Moreover, "[a]s a general matter, the Supreme Court and the Second Circuit have made clear that district courts are to take a hospitable view of applications to compel the production of evidence by persons found or residing in the United States for use in foreign litigation." *In re Porsche Automobil Holding SE*, No. 1:15-mc-417 (LAK), 2016 WL 702327, at *2 (S.D.N.Y. Feb. 18, 2016).

**I.   The Application Satisfies the Three Statutory Requirements of 28 U.S.C. § 1782.**

    **A.   Respondent "Is Found" in This District.**

Respondent's participation in the Merger, which involved de-listing the Company from the New York Stock Exchange, establishes that Respondent is "found in" this District for purposes of Section 1782. As Judge Failla recently held, trading securities on a New York–based exchange subjects a foreign entity to specific personal jurisdiction in this District, including for purposes of Section 1782. *See Pfaff v. Deutsche Bank AG*, No. 20-mc-0025-KPF, 2020 WL 3994824, at *10 (S.D.N.Y. July 14, 2020) (holding that "trading securities or commodities on an exchange in the forum subjects the defendant to specific personal jurisdiction in such forum"). The *Pfaff* case involved a Section 1782 application against two European banks concerning trading activity on COMEX, a commodities futures exchange located in New York City. The banks' employees were not physically present in New York when they executed the trades at issue, but their activity

8

directed at securities traded on a New York–based exchange was sufficient to create specific personal jurisdiction. *Id.* In granting the Section 1782 application, Judge Failla concluded that discovery related to the transaction "proximately resulted from the respondent's forum contacts" and so was properly subject to discovery under Section 1782. *Id.* Under *Pfaff*, this Court has specific personal jurisdiction over Respondent, satisfying the first statutory factor.

Here, this action arises out of a take-private transaction of 58.com whereby the Buyer Group purchased 58.com and, as a condition to that transaction, 58.com was de-listed from the New York Stock Exchange, a securities exchange located in New York City. Rasmussen Decl. ¶¶ 11, 17, 29. Respondent was one of two members of the Special Committee whose approval of the Merger led directly to 58.com's delisting from the New York Stock Exchange. *Id.* ¶ 21. Like in *Pfaff*, here, "the discovery material sought . . . largely relates to Moving Respondents'" activity on a securities exchange based in New York City, *Pfaff*, 2020 WL 3994824, at *10, and thus the requested discovery proximately resulted from Respondent's forum contacts, even if Respondent did not take those actions in New York.

### B. The Discovery Sought Is "For Use" in a Foreign Proceeding.

A Section 1782 application establishes the "for use" requirement by showing that the Requested Discovery may be submitted and relied on by the foreign tribunal. *See Certain Funds, Accounts and/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 118 (2d Cir. 2015). To satisfy this element, a petitioner must merely show that it has the procedural right to submit the requested documents to the foreign tribunal. *Accent Delight*, 869 F.3d at 132. A Section 1782 petitioner is not required to demonstrate that the information sought would be discoverable or admissible in the foreign proceedings. *Brandi–Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012) ("as a district court should not consider the discoverability of the evidence in the foreign proceeding, it should not consider the admissibility of evidence in the foreign proceeding in ruling on a section 1782 application"). Instead, the district court considers "the *practical ability* of an applicant to place a beneficial document—or the information it contains—before a foreign tribunal." *Accent Delight*, 869 F.3d at 131 (emphasis in original); *Mees*, 793 F.3d at 298 ("for

use" element satisfied if materials sought can "be employed with some advantage or serve some use in the proceeding").

As explained in the declaration from Petitioners' Cayman counsel, the Cayman Court will accept and consider any relevant evidence submitted by the parties, so long as it is lawfully obtained through Section 1782 and otherwise admissible. In the Appraisal Proceeding, the Cayman Court will consider all facts and matters that may have a bearing on the determination of fair value. Mangatal Decl. ¶ 37. As explained by Petitioners' Cayman counsel, this process will often involve a consideration of whether the process that led to that transaction was fair. Rasmussen Decl. ¶ 33. The Requested Discovery from Respondent, as a member of the Special Committee that approved the Merger, includes information about the process through which the price and terms of the Merger were negotiated between the Buyer Group and the Special Committee. Accordingly, the Cayman Court will consider the Requested Discovery given its relevance in determining the fair value of Petitioners' shares in the Company. Indeed, Petitioners have already relied upon evidence from related Section 1782 proceedings in the Appraisal Proceeding, and the discovery process in the Appraisal Proceeding is ongoing. *Id.* ¶¶ 42–43. The Requested Discovery is therefore plainly "for use" in the Appraisal Proceeding, and Petitioners have thus satisfied the second statutory requirement.

### C. Petitioners Are "Interested Person[s]."

"No doubt litigants are included among . . . the interested persons who may invoke § 1782." *Azima v. Citibank, N.A.*, No. 1:22-MC-72 (KPF), 2022 WL 1287938, at *3 (S.D.N.Y. Apr. 29, 2022) (quoting *Intel*, 542 U.S. at 256). Petitioners are parties to the Appraisal Proceeding, Rasmussen Decl. ¶ 4, and are thus "interested persons" under Section 1782.

All of the statutory elements are thus satisfied here.

## II. The Discretionary *Intel* Factors Weigh in Favor of Discovery.

Once the statutory threshold requirements of Section 1782 are met, a district court considers, in its discretion, whether to order the requested discovery. To do this, the district court

looks to the four *Intel* factors. *See Intel*, 542 U.S at 264. Each of the *Intel* factors is discussed below and weighs in favor of granting the Application.

        **A.    Respondent Is a Non-Participant in the Appraisal Proceeding.**

The first *Intel* factor asks whether the party from whom discovery is sought is a party to the foreign proceeding. The reason for this inquiry is because "when the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Intel*, 542 U.S. at 264. Respondent is not a party in the Appraisal Proceeding, and therefore will not be subject to party discovery in the Appraisal Proceeding. Rasmussen Decl. ¶ 40. Further, because Respondent does not reside in the Cayman Islands, the Cayman Court will not have jurisdiction to compel discovery from her. Mangatal Decl. ¶ 43. Petitioners, therefore, will not be able to take discovery of Respondent through the Appraisal Proceeding, even though her testimony may be crucial to the issues in that proceeding. Accordingly, this first *Intel* factor weighs in favor of granting the Application. *See, e.g.*, *In re FourWorld Event Opportunities Fund, L.P.*, 22 Misc. 316 (KPF), 2022 WL 17156111, at *4 (S.D.N.Y. Nov. 21, 2022) (granting Section 1782 application and finding that the first *Intel* factor favored petitioner because the respondent "is not a party to the Swedish Action"); *In re Blue Skye Fin. Partners S.A.R.L.*, 22 Misc. 171 (KPF), 2022 WL 2441074, at *3 (S.D.N.Y. July 5, 2022) (same).

        **B.    The Cayman Islands Court Is Receptive to the Requested Discovery.**

The second *Intel* factor requires courts to consider whether the "nature, attitude, and procedures" of the foreign tribunal indicate that it is receptive to Section 1782 assistance. *Brandi–Dohrn*, 673 F.3d at 81. In the Second Circuit, courts "should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782 . . . as embodied in a forum country's judicial, executive or legislative declarations that specifically address the use of evidence gathered under foreign procedures." *Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995). "Absent specific directions to the contrary from a foreign forum, the statute's

11

underlying policy should generally prompt district courts to provide some form of discovery assistance." *Id.* at 1102; *see also In re Porsche*, 2016 WL 702327, at *8 ("The law on this factor is clear: 'District courts have been instructed to tread lightly and heed only clear statements by foreign tribunals' that they would reject Section 1782 assistance.") (citations omitted).

Therefore, there is a strong presumption that foreign tribunals will be receptive to evidence obtained under Section 1782, and thus the burden is placed on the party opposing discovery to show that a foreign tribunal would reject the evidence obtained through Section 1782. *See In re Al-Attabi*, 21-MC-207 (VSB) (RWL), 2022 WL 229784, at *8 (S.D.N.Y. Jan. 26, 2022) ("Second Circuit case law places the burden on the party opposing discovery [under Section 1782] to show that a foreign court would *not* be receptive to this assistance.") (emphasis in original and quotation marks omitted).

Cayman courts will consider any evidence that bears on determining the fair value of a company's shares. *See* Mangatal Decl. ¶ 37. Moreover, as set forth in the Rasmussen Declaration, Cayman courts have specifically held that a Section 1782 application can be used to obtain discovery for use in Cayman Islands proceedings. *See id.* ¶ 54. Indeed, the Cayman Court of Appeal expressly held that the right to obtain full discovery, including pre-trial deposition testimony, "is a right conferred by U.S. law—it is not a right conferred by, or *to be withheld under Cayman law*." *Id.* ¶ 55 (emphasis added). Further, multiple U.S. courts have recognized that Cayman courts are receptive to evidence obtained through Section 1782, including from a court in this District, which granted document and deposition discovery from investment funds related to their participation in the Buyer Group for use in the same Appraisal Proceeding. *In re FourWorld Event Opportunities, LP*, No. 21-mc-00543-PKC, ECF No. 8 (S.D.N.Y. Aug. 8, 2021); *In re FourWorld Event Opportunities, LP*, No. 21-mc-00283-RGS, ECF No. 6 (D. Del. July 29, 2021) (same).[2] The receptivity of the Cayman court to evidence obtained through this Application will be no different.

---

[2] *See also In re Platinum Partners Value Arbitrage Fund L.P.*, 583 B.R. 803, 816 (Bankr. S.D.N.Y. 2018) ("Liquidators present unrebutted evidence that, far from being hostile to Cayman litigants

Accordingly, the second *Intel* factor weighs in favor of granting the Application.

### C.     Petitioners Are Not Circumventing Foreign Proof-Gathering Restrictions.

The third *Intel* factor looks to "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265.  In *Intel*, the Supreme Court expressly rejected the notion that Section 1782 requires that the evidence be discoverable in the foreign proceeding itself.  *Id.* at 261 ("A foreign nation may limit discovery within its domain for reasons peculiar to its own legal practices, culture, or traditions—reasons that do not necessarily signal objection to aid from United States federal courts.").  This factor thus counts against discovery only in the extreme circumstances where a Section 1782 application would circumvent "proof-gathering restrictions," that is, "rules akin to privileges that *prohibit* the acquisition or use of certain materials," *Mees*, 793 F.3d at 303 n.20 (emphasis in original), or "discovery that trenched upon the *clearly established* procedures of a foreign tribunal." *Euromepa*, 51 F.3d at 1099 (emphasis in original and quotation marks omitted).  No such circumstance is present here.

In addition, there is no exhaustion requirement—*i.e.*, a requirement that a petitioner first seek the discovery in a foreign court.  *Mees*, 793 F.3d at 303 ("We have rejected such a quasi-exhaustion requirement, reasoning that it finds no support in the plain language of the statute and runs counter to its express purposes.") (quotation marks omitted); *In re Top Matrix Holdings, Ltd.*,

---

seeking evidence under U.S. law, Cayman courts are in fact receptive to evidence obtained through U.S. discovery procedures, even if such evidence may not be discoverable under Cayman law."); *Gushlak v. Gushlak*, 486 F. App'x 215, 218 (2d Cir. 2012) (affirming use of Section 1782 applications in connection with Cayman divorce proceedings); *Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*, 785 F. Supp. 2d 434, 439 (S.D.N.Y. 2011) (granting Section 1782 applications seeking documents for use in Cayman proceedings); *In re Penner*, 2017 WL 5632658, at *3 (D. Mass. Nov. 22, 2017) (finding that the Cayman Court "is open to receiving § 1782 discovery").  Indeed, two district courts recently granted Section 1782 petitioners' applications for both document discovery and a deposition for use in an appraisal proceeding in the Cayman Islands.  *See In re Application of Athos Asia Event Driver Master Fund*, No. 4:21-MC-00153-AGF, 2021 WL 1611673, at *1 (E.D. Mo. Apr. 26, 2021) ("There is no indication in the record here that a discovery order would be unwelcome by the Cayman Islands court."); *In re Application of Athos Asia Event Driven Master Fund*, No. 1:21-MC-00208-GBF, ECF 8 (S.D.N.Y. Mar. 3, 2021) (granting Section 1782 petition for discovery for use in Cayman appraisal proceeding).

No. 1:18-MC-465 (ER), 2020 WL 248716, at *6 (S.D.N.Y. Jan. 16, 2020) ("Applicants are not required to exhaust all available remedies in the foreign jurisdiction before filing a Section 1782 application."). Instead, the third *Intel* factor is satisfied unless the foreign court actively prohibits the petitioner from gathering the information sought. *See Brandi–Dohrn*, 673 F.3d at 82 ("While *Intel* concerned the *discoverability* of evidence in the foreign proceeding, we see no reason why it should not extend to the *admissibility* of evidence in the foreign proceeding.") (emphasis in original). No such prohibition exists here. Therefore, the third *Intel* factor weighs in favor of granting the Application.

        **D.**        **The Subpoena Is Not Unduly Burdensome.**

The Requested Discovery is not "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. The standard is substantially the same as in ordinary domestic civil litigation under the Federal Rules of Civil Procedure. *In re del Valle Ruiz*, 939 F.3d 520, 532–33 (2d Cir. 2019) ("[T]he text of § 1782 authorizes discovery pursuant to the Federal Rules of Civil Procedure"); *see also In re Bayer AG*, 146 F.3d 188, 195 (3d Cir. 1998) ("The reference in § 1782 to the Federal Rules suggests that under ordinary circumstances the standards for discovery under those rules should also apply when discovery is sought under the statute.").

The Subpoena seeks only a deposition concerning information directly relevant to the central issues in the Appraisal Proceeding. *See* Section I.B, *supra*.[3] As one of the two members of the Special Committee, Respondent has personal knowledge of the key issues in the Appraisal Proceeding. That evidence is proportional to the needs of the Appraisal Proceeding, a multi-billion-dollar dispute.

Moreover, Petitioners are willing to meet and confer with Respondent to address any burden concerns. If the Court has remaining concerns about undue burden, granting the

---

[3] *See In re Gushlak*, No. 11-MC-218 (NGG), 2011 WL 3651268, at *6 (E.D.N.Y. Aug. 17, 2011) (a Section 1782 request, like any other discovery request, is "reasonably calculated to lead to relevant matter if there is *any possibility* that the information sought may be relevant to the subject matter of the action") (emphasis in original and citations omitted); *First Am. Corp. v. Price Waterhouse LLP*, 154 F.3d 16, 23 (2d Cir. 1998).

Application will not preclude Respondent from bringing a motion to quash or modify the discovery sought. If the Court finds merit to such objections, "it is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright" and precluding any discovery into these issues directly probative of the matters in the Appraisal Proceeding. *Euromepa*, 51 F.3d at 1101; *see also In re Habib*, No. 1:21-MC-522 (KMK), 2022 WL 1173364, at *4 (S.D.N.Y. Apr. 20, 2022) ("Where discovery sought under § 1782 is unduly burdensome, the Second Circuit has instructed district courts to issue 'a limited grant of discovery,' where possible, rather than deny the application.") (citations and quotation marks omitted); *Top Matrix Holdings*, 2020 WL 248716, at *7 (granting application because even though petitioner's "request is too broad, it can be appropriately trimmed.").

## CONCLUSION

For the foregoing reasons, Petitioners respectfully request that the Court grant the Application for an order pursuant to 28 U.S.C. § 1782.

Dated: January 31, 2023

By:  */s/ Duane L. Loft*

**PALLAS PARTNERS (US) LLP**
Duane L. Loft
Brianna Hills Simopoulos
John McAdams
75 Rockefeller Plaza
New York, NY 10019
Telephone: (212) 970-2300
Duane.Loft@pallasllp.com
Brianna.Simopoulos@pallasllp.com
John.McAdams@pallasllp.com

*Counsel for Petitioners*

15